2003 OK 96

**Denise Dianne FULSOM,
Plaintiff/Appellee,**

v.

**Bodine FULSOM, Defendant/Appellee,**

and

**Joe Fulsom and Jean Fulsom, Intervening Defendants/Appellants.**

**No. 96,458.**

Supreme Court of Oklahoma.

Nov. 12, 2003.

B.H. Shoemake of Shoemake Law Office, Pawhuska, OK, for Plaintiff/Appellee.

Grace K. Yates and Kenneth E. Holmes of Holmes and Yates, Ponca City, OK, for Defendant/Appellee.

Patti J. Palmer of Palmer & Lamirand, Pawhuska, Oklahoma for Intervening Defendants/Appellants.

LAVENDER, J.:

¶1 In this case we decide whether 43 O.S.2001, § 110(D) authorized the trial court to order Joe and Jean Fulsom (intervening defendants/appellants/paternal grandparents) to pay attorney fees to Denise Dianne Fulsom (plaintiff/ex-wife/appellee/mother) and Bodine Fulsom (defendant/ex-husband/appellee/father), in a post-divorce-decree child custody modification proceeding. We hold

§ 110(D) does not provide authority for the attorney fee awards against grandparents. Instead, § 110(D) only gives a trial court discretionary equitable authority to award attorney fees for or against the two original parties to the divorce case, i.e., the divorced spouses, based on a judicial balancing of the equities between those two parties.

## PART I. STANDARD OF REVIEW.

 ¶2 The focus of this case is gauging the meaning of § 110(D); thus, confronting us is a question of law. A legal question involving statutory interpretation is subject to de novo review [Samman v. Multiple Injury Trust Fund, 2001 OK 71, ¶8 and n. 5, 33 P.3d 302, 305 and n. 5], i.e., a non-deferential, plenary and independent review of the trial court's legal ruling. Id.

## PART II. FACTUAL AND PROCEDURAL BACKGROUND.

¶3 Mother and father divorced in 1997. The divorce decree awarded father custody of the parties' two minor children. In 2000 mother sought to modify the decree to place custody with her, which father opposed. Paternal grandparents intervened in the post-divorce-decree child custody modification proceeding and sought to place custody with them. After hearing, via an "Order of Modi-

1. The hearing began in August 2000 and ended in January 2001. It took place on a handful or so days and/or partial days during this time period. The "Order of Modification" is not challenged in this appeal.

2. The "Order Granting Motion for Attorney Fees", filed in the trial court in July 2001, ordered grandparents to pay fees of $6,218.75 to mother and $7,147.76 to father.

3. In mother's "Application for Attorney Fees and Costs and Supporting Brief", filed below in April 2001, she also requested fees from father. No issue is raised in this appeal concerning any trial court ruling on mother's fee quest against father. The Court of Civil Appeals' (COCA) majority opinion, in addition to reversing the fee awards, remanded to the trial court "for consideration of Mother's and Father's quests for attorney fees against each other."

4. In addition to arguing on appeal that 43 O.S. 2001, § 110 did not provide authority for the fee awards, grandparents also challenged the reasonableness of the fees awarded. In view of the COCA's ruling that § 110(D) did not provide authority for the attorney fee awards at all, the

fication" filed in March 2001, the trial court dismissed grandparents' motion to modify based on a finding they failed to show either mother or father was unfit, granted mother's motion and awarded her custody.[1]

¶4 Thereafter, both parents separately moved to have grandparents pay their attorney fees, each relying on § 110(D) as the authority allowing a fee recovery. Grandparents responded, arguing § 110 did not provide authority to award fees against them. The trial court granted both motions, grandparents were ordered to pay the attorney fees of each parent and grandparents appealed the fee awards.[2]

¶5 In a 2–1 decision the Court of Civil Appeals (COCA), Division I reversed the awards.[3] In effect, the COCA's majority opinion held that § 110(D), read in conjunction with § 110(C), granted only discretionary authority to award attorney fees for or against the two original parties to the divorce case, i.e., the divorced wife and husband.[4] The COCA's dissenting judge believed § 110(D) should be interpreted in light of 10 O.S.2001, § 5(E)(7) and (H), provisions concerning authority to award attorney fees in proceedings involving grandparents and visitation with their grandchildren.[5]

COCA did not need to decide the reasonableness issue. For the same reason it is unnecessary for us to reach grandparents' reasonableness issue(s).

5. In his January 2002 appellate answer brief and June 2002 petition for writ of certiorari father asserts grandparents confessed his fee motion because their trial court response to it was filed more than fifteen (15) days after the motion was served on them. The confession argument is based on Rule 4(e) of the Rules for District Courts of Oklahoma, 12 O.S.2001, Ch.2, App. Father's fee motion was filed in the trial court on April 6, 2001; he alleges it was served on grandparents March 30, 2001; and grandparents' response was filed on May 14, 2001. In 2001, when father's fee motion was filed and the trial court ruled on it, Rule 4(e) provided: "[a]ny party opposing a motion, except those enumerated in Section c above, shall serve and file a brief or a list of authorities in opposition within fifteen (15) days of the service of the motion, or the motion shall be deemed confessed." Rule 4(c) does not except an attorney fee motion. The COCA's majority opinion ruled on father's confession argument by, in effect, holding it would be improper to deem the fee motion confessed in

¶ 6 Though the COCA's majority opinion correctly held § 110(D) did not authorize the attorney fee awards against grandparents, we previously granted parents' separate petitions for writs of certiorari to decide a first impression question, to wit: does § 110(D) authorize the attorney fee awards against grandparents in this post-divorce-decree modification proceeding or, instead, does § 110(D) grant only discretionary equitable authority to award attorney fees against or in favor of the two parties to the original divorce case, i.e., the divorced spouses at the time of the modification proceeding?

## PART III. ANALYSIS.

 ¶ 7 The primary goal of statutory construction is to ascertain and follow the intention of the Legislature. *TRW/Reda Pump v. Brewington,* 1992 OK 31, 829 P.2d 15, 20. The plain meaning of a statute's language is conclusive except in the rare case when literal construction would produce a result demonstrably at odds with legislative intent. *Samman v. Multiple Injury Trust Fund, supra,* 2001 OK 71, at ¶ 13, 33 P.3d at 307; *City of Tulsa v. Public Employees Relations Board,* 1998 OK 92, ¶ 14, 967 P.2d 1214, 1220. Also, a court is duty-bound to give effect to legislative acts, not amend, repeal or circumvent them. *Id.,* 1998 OK 92, at ¶ 18, 967 P.2d at 1221. A universally recognized principle in cases when a court is called on to interpret legislative enactments is that the court is without authority to rewrite a statute merely because the legislation does not comport with the court's conception of prudent public policy. *See id.*

 ¶ 8 This Court stated the following in *State ex rel. Tal v. City of Oklahoma City,* 2002 OK 97, ¶ 16, 61 P.3d 234, 243, concerning the well-known American Rule as to the recovery of attorney fees in litigation:

> Oklahoma follows the American Rule.... The Rule is generally that each litigant pays for their own legal representation and our courts are without authority to assess attorney fees in the absence of a specific statute or contract allowing for their recovery. Exceptions to the Rule are narrowly defined and carved out with great caution because it is understood liberality of attorney fee awards against the non-prevailing party has a chilling effect on our open access to courts guarantee. [Citations omitted.]

Oklahoma jurisprudence, thus, recognizes that attorney fee statutes are strictly applied because to do otherwise holds out the real possibility of chilling access to the courts. *Beard v. Richards,* 1991 OK 117, 820 P.2d 812, 816; *In re Adoption of K.M.S.,* 2000 OK CIV APP 25, ¶ 3, 997 P.2d 856, 857; *see Abbott v. Abbott,* 2002 OK CIV APP 6, ¶ 14, 38 P.3d 937, 941. For an award of attorney fees to be authorized under a particular statute the authorization must be found within the strict confines of the involved statute. *Beard v. Richards, supra,* 820 P.2d at 816. Further, if the involved attorney fee statute requires interpretation it may be read in context with other parts of the statute and in light of the law in effect at the time of its enactment. *See id.*

a situation where the trial court lacked the power to award attorney fees under the claimed authorizing statute, i.e., 43 O.S.2001, § 110.

The record presented on appeal fails to show father raised a confession argument in the trial court, either by written submission or by oral presentation at the May 14, 2001 proceeding concerning mother's and father's fee requests. Nothing in the record presented to us, including the trial court order under review, indicates the trial judge deemed father's motion confessed based on Rule 4(e). Under the record before us, then, **father first raised the confession argument on appeal.** "Matters not first presented to the trial court for resolution are generally not considered on appeal." *Stonecipher v. District Court of Pittsburg County,* 1998 OK 122, ¶ 11, 970 P.2d 182, 186. In our view, nothing warrants devia-

tion from the general rule of non-consideration of issues raised for the first time on appeal. Thus, we do not consider the confession issue.

We also note that by Order of this Court of September 16, 2002, Rule 4(e) was amended (effective October 17, 2002) to provide: "[a]ny party opposing a motion, except those enumerated in Section c above, shall serve and file a brief or a list of authorities in opposition within fifteen (15) days **after** service of the motion, or the motion **may** be deemed confessed." (Emphasis added.) 12 O.S.Supp.2002, Ch.2, App. The September 2002 Order issued in Oklahoma Supreme Court Case No. SCBD–4553 and may be found at 2002 OK 69. Via the Order, the words "of the" contained in the 2001 version of Rule 4(e) were changed to "after" and the word "shall" in the 2001 version was changed to "may".

¶ 9 In *McDonald v. Wrigley,* 1994 OK 25, 870 P.2d 777, this Court held that grandparents may intervene in the parents' divorce action to attempt to show themselves entitled to custody of their minor grandchildren upon a proper showing, by clear and conclusive evidence, of unfitness of both parents. 870 P.2d at 781–782. Custody so awarded is considered temporary in nature because once a parent shows themselves fit they are generally entitled to regain custody. *Id.*[6] The propriety of an attorney fee award was not an issue in *McDonald v. Wrigley.* Thus, although we have recognized grandparental intervention in a parents' divorce case to seek custody of their grandchildren, we have not construed either § 110(C) or (D) to gauge whether or not those provisions are applicable to allow an award of attorney fees for or against grandparents who do so.

■ ¶ 10 In matrimonial litigation generally, the propriety of a counsel-fee allowance does not depend on prevailing party status, but is based on a judicial balancing of the equities. *Thielenhaus v. Thielenhaus,* 1995 OK 5, 890 P.2d 925, 934–935; *Merritt v. Merritt,* 2003 OK 68, ¶ 20, 73 P.3d 878, 884

**6.** *McDonald v. Wrigley,* 1994 OK 25, 870 P.2d 777, disapproved *Logan v. Smith,* 1979 OK 148, 602 P.2d 647, to the extent *Logan* disallowed adjudication of grandparental custody in a divorce case. *McDonald v. Wrigley,* 870 P.2d at 782.

**7.** The remainder of 43 O.S.2001, § 110 provides:

A. After a petition has been filed in an action for divorce or separate maintenance either party may request the court to issue:
1. A temporary order:
a. regarding child custody, support or visitation,
b. regarding spousal maintenance,
c. regarding payment of debt,
d. regarding possession of property,
e. regarding attorney fees,
f. restraining any person from transferring, encumbering, concealing, or otherwise disposing of any property except in the usual course of business or for the necessities of life, and, if so restrained, requiring such person to notify the other party reasonably in advance of any proposed extraordinary expenditures made after the order is issued,
g. enjoining a party from molesting or disturbing the peace of the other party or of any child,
h. excluding a party from the family home or from the home of the other party,

(attorney fees in such cases are granted only to litigant who qualifies for the benefit through process of judicial balancing of the equities); *Abbott v. Abbott,* 2001 OK 31, ¶ 11, 25 P.3d 291, 294 (counsel-fee allowances in child custody modification proceedings under § 110(D) do not depend on any one factor such as status as prevailing party or financial means of a party, but are granted to litigant who qualifies through process of equitable judicial balancing). Title 43 O.S.2001, § 110(C) and (D) provide:

C. Upon granting a decree of divorce or separate maintenance, the court may require either party to pay such reasonable expenses of the other as may be just and proper under the circumstances.

D. The court may in its discretion make additional orders relative to the expenses of any such subsequent actions, including but not limited to writs of habeas corpus, brought by the parties or their attorneys, for the enforcement or modification of any interlocutory or final orders in the dissolution of marriage action made for the benefit of either party or their respective attorneys.[7]

i. enjoining a party from removing a child from the jurisdiction of the court, and
j. providing other injunctive relief proper in the circumstances.
All applications for temporary orders shall set forth the factual basis for the application and shall be verified by the party seeking relief. The application and a notice of hearing shall be served on the other party in any manner provided for in the Rules of Civil Procedure. The court shall not issue a temporary order until at least five (5) days' notice of hearing is given to the other party.
After notice and hearing, a court may issue a temporary order granting the relief as provided by this paragraph; and/or
2. A temporary restraining order. If the court finds on the basis of a verified application and testimony of witnesses that irreparable harm will result to the moving party, or a child of a party if no order is issued before the adverse party or attorney for the adverse party can be heard in opposition, the court may issue a temporary restraining order which shall become immediately effective and enforceable without requiring notice and opportunity to be heard to the other party. If a temporary restraining order is issued pursuant to this paragraph, the motion for a temporary order shall be set within ten (10) days.
B. Any temporary orders may be vacated or modified prior to or in conjunction with a final

¶ 11 When one reads § 110(C) and (D), the plain language points to legislative contemplation of but two parties, the divorcing or divorced spouses. As noted by the COCA's majority opinion, to include others in addition to those two parties (such as intervening grandparents) would require substituting the words "any party" for "either party" and "of any other party" for "of the other".[8] Giving such a broad scope to § 110(C) and (D) would also entail liberal application, rather than strict; would be based on implication, rather than expression; and would run counter to the normal way we apply and view attorney fee statutes.

¶ 12 Nothing in the other subsections of § 110 expresses an intent that others, such as intervening grandparents, were meant to fall within the ambit of the expense provisions found in § 110(C) and (D). *See supra* note 7 for other subsections of § 110. For us to rule that intervening grandparents are included within the terms of the provisions would entail rewriting the language, something we have no warrant in undertaking. If the Legislature intends to include others in addition to the divorcing or divorced spouses within the discretionary equitable sweep of § 110(C) and (D), it is that body which must do so. To date, the Legislature has not expressed such an intention.

¶ 13 We also find nothing in 10 O.S. 2001, § 5(E)(7) and (H) (concerning grandpa-

rental visitation and the potential for an attorney fee recovery for or against grandparents in such a proceeding) at odds with a determination § 110(C) and (D) only contemplate two persons within their attorney fee orbit. In 1999 an **express** attorney fee provision was added to 10 O.S.Supp.1997, § 5 as subsection (E). 1999 Okla.Sess.Laws, Ch.383, § 1; 10 O.S.Supp.1999, § 5(E). It provided: "[i]n any action for grandparental visitation pursuant to this section, the court may award attorney fees and costs, as the court deems equitable." In 2000, § 5 was extensively amended, one amendment being § 5(E) became § 5(H); another being the addition of § 5(E)(7). The latter provides: "[i]f the court finds that the motion for enforcement of visitation rights has been unreasonably filed or pursued by the grandparent, the court may assess reasonable attorney fees, mediation costs, and court costs against the grandparent." 2000 Okla.Sess.Laws, Ch.246, § 1; 10 O.S.Supp.2000, § 5(E)(7). In 2003, § 5 was again amended (effective November 1, 2003), but § 5(E)(7) and (H) remained unaltered. 2003 Okla.Sess.Laws, Ch.268, §§ 1–2. Although not cited by any party, or by the COCA's majority opinion or dissent, we also note that 10 O.S.2001, § 5(E)(6)(d) also contains an attorney fee provision relating to grandparental visitation matters. It provides:

> If the court finds that visitation rights of the grandparent have been unreasonably

decree on a showing by either party of facts necessary for vacation or modification. Temporary orders terminate when the final judgment on all issues, except attorney fees and costs, is rendered or when the action is dismissed. The court may reserve jurisdiction to rule on an application for a contempt citation for a violation of a temporary order which is filed any time prior to the time the temporary order terminates.

The 2001 version of § 110 is identical to 43 O.S.Supp.1997, § 110, that in force when mother filed her motion to modify custody in 2000. Section 110 was amended in 2002 and 2003, the amendments primarily dealing with aspects of an automatic temporary injunction in dissolution or annulment of marriage, or legal separation, litigation. 2002 Okla.Sess.Laws, Ch. 400, § 6; 43 O.S.Supp.2002, § 110; 2003 Okla.Sess.Laws, Ch. 302, § 3. Subsections 110(C) and (D) are now found at § 110(D) and (E). The 2002 and 2003 amendments have no impact on our disposition of this matter. Subsections 110(D) and (E) currently provide:

D. Upon granting a decree of dissolution of marriage, annulment of a marriage, or legal separation, the court may require either party to pay such reasonable expenses of the other as may be just and proper under the circumstances.

E. The court may in its discretion make additional orders relative to the expenses of any such subsequent actions, including but not limited to writs of habeas corpus, brought by the parties or their attorneys, for the enforcement or modification of any interlocutory or final orders in the dissolution of marriage action made for the benefit of either party or their respective attorneys.

8. The COCA's majority opinion is essentially consistent with two previous COCA's, Division I opinions. *Sicking v. Sicking,* 2000 OK CIV APP 32, 996 P.2d 471, *cert. denied* (Okla.2000), *cert. denied* 531 U.S. 876, 121 S.Ct. 182, 148 L.Ed.2d 126 (2000); *Rogers v. Rogers,* 1999 OK CIV APP 123, 994 P.2d 102.

denied or otherwise unreasonably interfered with by the parent, the court shall enter an order providing for one or more of the following: ... assessment of reasonable attorney fees, mediation costs, and court costs to enforce visitation rights against the parent[.]

The 2003 amendments did not alter § 5(E)(6)(d).

¶ 14 In § 5 the Legislature has been **direct** and **express** in grandparental visitation matters concerning its intent to allow attorney fees in the circumstances covered by § 5(E)(6)-(7) and (H). No such directness or expression is found in § 110, other than as to the divorcing or divorced spouses. It may be that the Legislature provided for attorney fees in the visitation situation because it recognized visitation proceedings involving grandparents would be numerous, as opposed to custody requests which involve a more onerous infringement on parental rights. In other words, the Legislature may have simply decided that a general equitable attorney fee provision as to the latter was either not needed or warranted. In any event, § 5, concerning as it does grandparental visitation, simply cannot be stretched to engulf a proceeding not involving a visitation quest, but legal custody. It must also be stated that the wisdom of such legislative choices is not our concern, because such choices—absent constitutional or other recognized infirmity—rightly lie within the legislative sphere.

¶ 15 We also reject father's argument, to the effect, that intervening grandparents may somehow act with impunity in child custody proceedings brought in divorce cases if we fail to include them within § 110's attorney fee reach. The argument is misplaced.

If grandparents attempt intervention on wholly frivolous (legal and/or factual) grounds or somehow engage in bad faith litigation misconduct, there are statutory and inherent mechanisms available to deal with the situation. Title 12 O.S.2001, § 2011 provides a statutory solution. The basic contours of § 2011 are spelled out in *State ex rel. Tal v. City of Oklahoma City, supra,* 2002 OK 97, at ¶¶ 17-18, 61 P.3d at 243-245. Delineation of a court's inherent equitable authority to sanction bad faith litigation misconduct is also set forth in *State ex rel. Tal v. City of Oklahoma City,* 2002 OK 97, at ¶ 26, 61 P.3d at 247. Of course, this inherent authority was recognized by this Court over two decades ago in the case of *City National Bank & Trust Co. v. Owens,* 1977 OK 86, 565 P.2d 4. Neither § 2011 nor the inherent authority exception to the American rule as to the recovery of attorney fees is before us in this case, however, because neither were relied on by father or mother below, and the trial court plainly did not rule on their applicability. In other words, both father and mother placed their reliance solely on § 110(D), a provision we hold does not authorize the attorney fee awards against grandparents contained in the trial court order under review.[9]

**PART IV. SUMMARY.**

¶ 16 The parents of two minor children, grounding their requests on § 110, sought to have intervening grandparents pay their attorney fees in a post-divorce-decree child custody modification proceeding. The trial court awarded attorney fees to both parents and against grandparents. The COCA, in a 2–1 decision, reversed the attorney fee awards. Although the COCA's majority opinion correctly reversed, certiorari was granted by us to decide a question of first impression concerning the applicability

---

9. We note we are aware there are other statutes that may authorize an attorney fee award against intervening grandparents in a child custody dispute in a divorce case. *See e.g.* 43 O.S.Supp. 2002, § 112(D)(2) and 43 O.S.2001, § 551–101 et seq., the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), see collectively, §§ 551–102(4), 551–205(C) and 551–312(A) of the UCCJEA. Section 112 was amended in 2003, but subsection (D)(2) remains unchanged. Further, although the record presented to us seems to show grandparents are residents of Kansas, not Oklahoma and that the minor children involved in the custody dispute lived in Kansas with grandparents at least some of the time father had custody of them under the divorce decree's terms, neither father nor mother have relied on the UCCJEA, § 112(D)(2) or any other such statute in the trial court, on appeal or certiorari, to support their attorney fee quests. Therefore, a decision as to the exact scope of the aforementioned statutes or others and their applicability to third-party intervenors in a post-divorce-decree proceeding involving an attempt to modify child custody must await another day.

of § 110(D) in the circumstances of this case. We now hold § 110(D) does not provide authority for the attorney fee awards against grandparents. Instead, § 110(D) only gives a trial court discretionary equitable authority to award attorney fees for or against the two original parties to the divorce case, i.e., the divorced spouses at the time of the modification proceeding, based on a judicial balancing of the equities between those two parties.

¶ 17 The opinion of the Court of Civil Appeals is **VACATED** and the trial court order granting attorney fees against intervening defendants/appellants and in favor of plaintiff/appellee and defendant/appellee is **REVERSED.**[10]

¶ 18 ALL JUSTICES CONCUR.

**10.** In November 2002 father filed a motion for oral argument pursuant to Oklahoma Supreme Court Rule 1.9, 12 O.S.2001, Ch.15, App. 1. Rule 1.9 provides that oral argument before this Court is not a matter of right and a motion requesting oral argument shall set forth the exceptional reason that oral argument is necessary. The reasons put forward in father's motion are 1) the issue of whether the trial court had authority under 43 O.S.2001, § 110(C) and (D) to award attorney fees against grandparents is one of first impression and 2) oral argument would assist this Court in determining legislative intent as to the definition of "party", as used in said subsections. In our view, the matter has been adequately presented by the appellate and certiorari submissions of grandparents, father and mother and the record from the trial court presented to us. Also, we believe oral argument would not materially assist us in evaluating the legislative intent behind § 110(C) and (D), involving as it does, a legal question based on the statutory language and our prior jurisprudence concerning strict application of attorney fee statutes. We **deny** father's motion for oral argument.